

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

**MARK ODOM,**

*Plaintiff,*

v.

**COLONNA'S SHIPYARD INC.**

*Defendant.*

Civil Action No.: 2:22cv535

**COMPLAINT**

**Jury Trial Demanded**

---

## COMPLAINT

Plaintiff Mark Odom ("**Mr. Odom**"), by and through counsel files this complaint against Defendant Colonna's Shipyard, Inc. ("**CSI**") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("**Title VII**"), and the Virginia Human Rights Act, Va. Code Ann. § 2.2-3900, *et seq.*, ("**VHRA**"). Mr. Odom hereby states as follows:

### INTRODUCTION

1.      For a total of over twenty-one years, Mr. Odom worked as a loyal and faithful employee for Defendant CSI as a Specialist, Crane Operator and Supervisor, with specialized experience in floating cranes.

2.      Mr. Odom is a Christian. As a Christian who believes he has been redeemed by the life, death, and resurrection of Jesus Christ.  Mr. Odom is bound by the laws of God. Receiving the COVID-19 vaccine violates Mr. Odom' sincerely held religious beliefs. Mr. Odom brings this action because Defendant could have accommodated his religious beliefs without any hardship

1

whatsoever, and its failure to do so violated Title VII and severely damaged his career and future earning potential.

3.      Mr. Odom submitted his request for a religious exemption to the COVID-19 vaccine mandate in early November 2021, to Ms. Anna Stowers, formerly employed with CSI in the Human Resources Department.

4.      On or about November 12, 2021, Mr. Odom was verbally told by Ms. Stowers that "**Colonna is not accepting any exemptions other than for pregnancy**," or words to that effect.

5.      Mr. Odom has never received a response from the CSI Human Resources Department or any other employee regarding the status of his religious exemption request. Mr. Odom's request was never denied or approved.

6.      Mr. Odom was placed on indefinite unpaid administrative leave on November 15, 2021 for a period of 60 days.

7.      Mr. Odom was later informed his 60 day unpaid leave period would be extended to 90 days.

8.      From in or about November 2021 through in or about March 2022, Mr. Odom repeatedly inquired with CSI Human Resources Department regarding the status of his employment, to no avail.

9.      On March 15, 2022, Mr. Odom received a letter from CSI dated March 7, 2022 notifying him that his employment had been terminated.

10.     Mr. Odom filed a charge of discrimination on or about March 8, 2022, with the U.S. Equal Employment Opportunity Commission (the "**EEOC**"). He received a Notice of Right to Sue letter on September 19, 2022.

11.     Defendant failed, as required under Title VII, to meaningfully consider or respond to Mr. Odom' request for an accommodation. Defendant failed to provide a process by which he could effectively present his request for accommodation and engage in negotiation and discussion. This is unsurprising, given that CSI instructed Mr. Odom that no accommodations would be given for reasons other than pregnancy.

12.     Defendant's original notice of November 1, 2021 informing its employees of the vaccine mandate did not provide information on requesting medical or religious exemptions.

13.     Defendant's letter to Mr. Odom of November 9, 2021 warning him that he would be placed on administrative leave effective November 15, 2021 also did not mention the possibility for medical or religious exemptions to the vaccine mandate.

14.     Mr. Odom was never made aware that CSI had a form for requesting exemptions to the COVID-19 vaccine mandate.

15.     At the time Mr. Odom handed his religious exemption request to Ms. Stowers in the Human Resources Department, he was never provided a copy of the form for requesting exemptions, nor was he informed that any such form existed.

16.     Despite Mr. Odom providing an explanation of his faith, CSI denied Mr. Odom the interactive process by refusing to engage in discussions with Mr. Odom regarding his religious beliefs. If CSI had reason to believe that Mr. Odom's beliefs that precluded him from vaccination were insincere or were not religious in nature, CSI failed to request additional information through an interview or supporting documentation.

17.     Defendant's concerted actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Virginia Human Rights Act, Va. Code Ann. § 2.2-3900, *et seq*.

3

Mr. Odom now brings this action to recover for the damage that Defendants' discriminatory actions caused.

### JURISDICTION AND VENUE

18.     The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 2000e-5 and 28 U.S.C. §§ 1331, 1343 because this action arises under federal law.

19.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, for state law claims under the Virginia Human Rights Act, Va. Code Ann. § 2.2-3900 because such claims stem from part of the same case or controversy arising from a common nucleus of operative fact.

20.     Venue is proper in this district as Defendant operates corporate headquarters in this district, and one or more of Defendant's acts and those events complained of occurred herein, pursuant to 28 U.S.C. § 1391.

21.     This Court is authorized to grant Mr. Odom declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

22.     This Court is authorized to grant Mr. Odom' prayer for relief regarding costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 2000e-5(k) and Va. Code Ann. § 2.2-3908.

### PARTIES

23.     Mr. Odom is a citizen and resident of Chesapeake, Virginia.

24.     Defendant CSI operates headquarters in Norfolk Virginia, located at 400 East Indian River Road, Norfolk, Virginia 23523.

25.     All of the above paragraphs are incorporated into the following factual averments and claims as if fully set forth therein. Likewise, each of the following facts are incorporated into all of the others as if fully set forth therein.

## FACTUAL ALLEGATIONS

### Mr. Odom's Religious Beliefs

26.     Mr. Odom is a Christian. He celebrates the life of Jesus Christ, believes in the teachings of Christ in the Bible, prays daily, celebrates all of the Christian holidays, and incorporates his faith into all aspects of his life. Mr. Odom has sincerely held religious beliefs that prevent him from receiving the COVID-19 vaccine.

27.     Mr. Odom's religious exemption request articulated why receiving the COVID-19 vaccination offends his religious faith and violates his conscience.

28.     Mr. Odom submitted a hand-written hard copy statement to Defendant CSI in or about early November 2021, describing his beliefs and why they prevent him from receiving the COVID-19 vaccine.

### Mr. Odom's Work Experience and Employment with CSI

29.     Mr. Odom was first employed by CSI from approximately September 1987 through approximately July 1995, where he served as a Specialist, Crane Operator and Supervisor.

30.     Mr. Odom left employment with CSI to work in marine construction for fifteen years, where he received his Merchant Mariner Credential[1] ("**MMC**") and Tug Captain Master License. He also obtained a Transportation Worker Identification Credential ("**TWIC**") for local barge movements and obtained specialized experience in floating crane operations.

31.     Unsurprisingly, because of his exceptional performance record and substantial experience in the industry, CSI re-hired Mr. Odom in or about September 2009 to bring his unique skillset in floating crane operations to CSI after CSI purchased a large crane.

---

[1] The Merchant Mariner Credential is a certificate issued by the United States Coast Guard in accordance with guidelines of the International Convention on Standards of Training, Certification and Watchkeeping for Seafarers to United States seafarers in holy order to show evidence of a mariner 's qualifications. *See* https://www.edumaritime.net/uscg-mmc.

32.     As a specialist in floating crane operations, CSI achieved a new capability as a result of Mr. Odom's expertise. CSI was able to put a new large crane on a water barge, saving CSI the extraordinary expense of renting a barge and crane.  With Mr. Odom's expertise, CSI was able to purchase a second large crane and transfer the crane onto a water barge.

33.     Mr. Odom trained many other CSI operators in the skill of floating crane operations. His training was so effective that many of his understudies left CSI for higher paying jobs after learning this unique skillset.  In fact, one of Mr. Odom's understudies took over his position after he was placed on leave without pay and terminated.

34.     Mr. Odom worked for CSI from September 2009 until he was terminated in March 2022.

35.     At the time Mr. Odom was placed on leave without pay, he spent the vast majority of his time (95%) working in a single occupancy crane compartment.

36.     Mr. Odom was repeatedly recognized during his employment with Defendant CSI with attendance and safety awards.

37.     Mr. Odom received no complaints regarding his job performance from Defendant CSI. Mr. Odom had no disciplinary or adverse administrative records throughout his twenty-one years as a CSI employee.

38.     In total, Mr. Odom worked for CSI for over twenty-one (21) years. Mr. Odom was well-respected and well-liked by his colleagues. Mr. Odom also socialized with members of the Colonna family, who own CSI.

39.     Mr. Odom took pride in his work for CSI and believed he was part of the CSI family. Mr. Odom managed a Health Club and bodybuilding Gym owned by CSI as a second job

and competed in bodybuilding competitions sponsored by Colonna's, receiving the Amateur Athletic Union ("**AAU**") Title of "Mr. Tidewater" and "Mr. Old Dominion" in 1987.

40.     Mr. Odom was planning to retire with full benefits at age 70 in June 2028.

41.     Mr. Odom was age 63 at the time of his termination.

42.     On information and belief, following Mr. Odom's termination, an individual that Mr. Odom had trained in crane operations, who was in his mid-thirties took over Mr. Odom's duties as a crane operator.

### The COVID-19 Pandemic

43.     By the Spring of 2020, the coronavirus, SARS-CoV-2, had spread to many nations, including the United States.

44.     Since the start of the pandemic to the date of Mr. Odom's termination, three separate COVID-19 vaccines had been developed and authorized or approved by the United States government for use.

45.     On December 11, 2020 and December 18, 2020, the FDA issued Emergency Use Authorization ("**EUA**") for the Pfizer/BioNTech and Moderna COVID-19 vaccines. On February 27, 2021, the FDA issued EUA for the Janssen/Johnson & Johnson COVID-19 vaccine for use in individuals 18 years of age and older.

46.     On August 23, 2021, the FDA issued full approval of the Pfizer-BioNTech vaccine (Comirnaty) for persons 16 years of age and older. On January 31, 2022, the FDA issued full approval of the Moderna vaccine (Spikevax) for persons 18 years of age and older.

47.     Following Mr. Odom's termination, the FDA issued EUA for the Novavax COVID-19 vaccine for use in individuals 18 years of age and older.

7

### Defendant's Vaccine Mandate

48.     On September 9, 2021, President Biden's gave remarks along with the issuance of Executive Order 14042[2] ("**EO 14042**"), stating that companies that want to do business with the federal government would be required to have a vaccinated workforce.[3]

49.     On September 24, 2021, the Safer Federal Workforce Task Force ("**Task Force**") issued guidance for federal contractors, including CSI, regarding EO 14042. This guidance included the following regarding accommodations:[4]

> A covered contractor may be required to provide an accommodation to covered contractor employees who communicate to the covered contractor that they are not vaccinated against COVID-19 because of a disability (which would include medical conditions) or because of a sincerely held religious belief, practice, or observance. A covered contractor should review and consider what, if any, accommodation it must offer. Requests for "medical accommodation" or "medical exceptions" should be treated as requests for a disability accommodation.

50.     On September 30, 2021, the Federal Acquisition Regulation ("**FAR**") Council issued a memorandum titled, "Issuance of Agency Deviations to Implement EO 14042" which stated that all covered contractor employees are required to be fully vaccinated for COVID-19 by December 8, 2021, *"except in limited circumstances where an employee is legally entitled to an accommodation."[5]*

---

[2] *Ensuring Adequate COVID Safety Protocols for Federal Contractors,* Executive Order 14042, 86 FR 50985, Document Number: 2021-19924 https://www.federalregister.gov/documents/2021/09/14/2021-19924/ensuring-adequate-covid-safety-protocols-for-federal-contractors.

[3] *Remarks by President Biden on Fighting the COVID-19 Pandemic,* The White House (September 9, 2021), *available at* https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/.

[4] *Safer Federal Workforce Task Force COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors*, Safer Federal Workforce (September 24, 2021), *available at* https://www.saferfederalworkforce.gov/downloads/Draft%20contractor%20guidance%20doc_20210922.pdf.

[5] *Memorandum, Subj: Issuance of Agency Deviations to Implement Executive Order 14042* (September 30, 2021), *available at* https://www.whitehouse.gov/wp-content/uploads/2021/09/FAR-Council-Guidance-on-Agency-Issuance-of-Deviations-to-Implement-EO-14042.pdf. (Emphasis added.)

51.     On November 1, 2021, CSI disseminated a "Notice to All Employees" that required employees to provide proof of COVID-19 vaccination by November 12, 2021, with failure to comply to result in indefinite leave without pay commencing on November 15, 2021. This notice did not mention religious or medical exemptions or the process for applying for said exemptions.

52.     On November 4, 2021, President Biden issued a Fact Sheet stating that contractor employees would have until January 4, 2022 to receive their second dose of a two-dose COVID-19 vaccine or the single-dose COVID-19 vaccine.[6]

53.     On November 9, 2021, CSI Human Resource issued a letter to Mr. Odom notifying him that failure to provide proof that he had received the COVID-19 vaccine would result in him being placed on unpaid administrative leave effective November 15, 2021. This notice did not mention religious or medical exemptions to the COVID-19 vaccine mandate.

54.     On November 10, 2021, the Task Force issued updated guidance for federal contractors extending the deadline for employees to be fully vaccinated to January 18, 2022.  This guidance stated that exemptions are permitted "where an employee is legally entitled to an accommodation."[7]

### Mr. Odom's Request for a Religious Accommodation

55.     In early November 2021, Mr. Odom submitted his request for a religious exemption to the COVID-19 vaccination along with laboratory proof of immunity to the SARS-CoV-2 virus via hard copy to Ms. Anna Stowers in the CSI Human Resources department.

---

[6] *Fact Sheet: Biden Administration Announces Details of Two Major Vaccination Policies*, The White House (November 1, 2021), *available at* https://www.whitehouse.gov/briefing-room/statements-releases/2021/11/04/fact-sheet-biden-administration-announces-details-of-two-major-vaccination-policies/.
[7] *Safer Federal Workforce Task Force COVID-19 Workplace Safety: Guidance for Federal Contractors and Subcontractors*, Safer Federal Workforce (November 10, 2021), *available at* https://www.saferfederalworkforce.gov/downloads/Guidance%20for%20Federal%20Contractors_Safer%20Federal%20Workforce%20Task%20Force_20211110.pdf.

56. Mr. Odom was never informed by Ms. Stowers or anyone employed by CSI that there was a designated form for requesting accommodations to the COVID-19 vaccination.

57. On or about November 12, 2021, Mr. Odom was verbally informed by Ms. Stowers that CSI "**is not accepting any exemptions other than for pregnancy**," or words to that effect.

58. On information and belief, another former CSI employee inquired with a CSI supervisor regarding accommodations to the COVID-19 vaccination, to which the supervisor replied, "don't bother, it won't be approved," or words to that effect. On information and belief, said employee heard that the only accommodation CSI would give to the COVID-19 vaccination was for the temporary medical condition of pregnancy.

## Unpaid Leave

59. On or about November 12, 2021, Mr. Odom was notified by his supervisor, Mr. Jeff Williams, that Mr. Odom would be placed on unpaid leave on November 15, 2021.

60. "[U]npaid leave may not be reasonable when an employee specifically requests another accommodation that would allow him to perform the essential functions of the position without missing work." *Price v. Norfolk S. Corp.*, No. 2:21cv223, 2022 U.S. Dist. LEXIS 175238, at *45 (E.D. Va. July 21, 2022) (quoting *Mamola v. Grp. Mfg. Servs.,* No. 08-1687, 2010 WL 1433491, at *4 (D. Ariz. Apr. 9, 2010)).

61. On November 15, 2021, Mr. Odom was placed on unpaid leave for a 60-day period.

62. At the time Mr. Odom was placed on unpaid leave, he has not received any determination or notice regarding the status of his request for a religious exemption to the COVID-19 vaccination.

63. Aside from personal communications from his former supervisor, Mr. Odom never received any communications, correspondence, phone calls or voicemails from CSI regarding his

10

religious exemption request from November 15, 2021 to March 15, 2022, the date he received a termination letter.

## Nationwide Injunction

64.     On December 7, 2021, the United States District Court for the Southern District of Georgia halted enforcement of EO 14042 and the federal contractor COVID-19 vaccine mandate by issuing a nationwide injunction in the case of *Georgia v. Biden,* No. 1:21-cv-163, 2021 U.S. Dist. LEXIS 234032 (S.D. Ga. Dec. 7, 2021).

65.     On December 17, 2021, the United States Court of Appeals for the Eleventh Circuit denied the United States Government's motion for an emergency stay of the nationwide injunction that halted enforcement of EO 14042 and the federal contractor COVID-19 vaccine mandate. *See Georgia v. Biden,* No. 21-14269 (11th Cir. Dec. 17, 2021) (Order denying the motion for stay because the government had not established irreparable injury absent a stay).

66.     Despite the nationwide injunction halting enforcement of EO 14042 and the federal contractor COVID-19 vaccine mandate, CSI terminated Mr. Odom's employment.

## Termination of Mr. Odom's Employment

67.     From November 15, 2021 through the date of Mr. Odom's termination on March 15, 2022, Mr. Odom repeatedly called the CSI Human Resources office to inquire regarding the status of his religious exemption request to the COVID-19 vaccine mandate.  Mr. Odom never received a status update despite his numerous inquiries.

68.     Mr. Odom's 60-day administrative leave period ended on January 15, 2022.

69.     Following January 15, 2022, Mr. Odom did not know the status of his employment with CSI.

70.     From January 15, 2021 through the date of Mr. Odom's termination on March 15, 2022, Mr. Odom was only able to confirm that he was still an unpaid employee of CSI by attempting to use his health insurance.

71.     From November 15, 2021 through the date of Mr. Odom's termination on March 15, 2022, Mr. Odom was never contacted by CSI regarding the status of his request for a religious exemption to the COVID-19 vaccine mandate.

72.     On March 15, 2022, Mr. Odom received a termination letter from CSI dated March 7, 2022, stating that his "90-day Leave Without Pay employee status" had expired.  The letter was signed by LaPortia Morgan, Human Resources Manager.

73.     The termination letter did not provide any justification or reason for the termination of Mr. Odom's employment.

74.     The termination letter did not mention Mr. Odom's request for a religious exemption to the COVID-19 vaccination.

75.     Mr. Odom had never been informed that his unpaid leave period had been extended from 60 days to 90 days.

76.     Mr. Odom has never received a response from CSI regarding his request for a religious exemption to the COVID-19 vaccine mandate.

77.     Despite renewing his MMC and diligently searching for alternate employment, as of the date of this filing Mr. Odom has not been able to secure alternate employment in his field of expertise.

## CSI's Refusal to Accommodate

78.     Defendant failed to inquire into Mr. Odom's religious beliefs and denied him the opportunity to explain why his beliefs conflicted with the COVID-19 vaccination requirement.

12

79.     Had Defendant inquired, it would have determined there were numerous no-cost accommodation options available in Mr. Odom's specific case.   First, the Defendant could have acknowledged what centuries of scientific research have conclusively established, namely, that natural immunity provides superior protection to vaccine induced immunity.  Defendant's refusal to follow the science strongly indicates discriminatory intent.   Second, notwithstanding Mr. Odom's natural immunity, the Defendant could have required enhanced safety protocols (*e.g.,* testing and masking for the rare occasions when Mr. Odom's job required face-to-face contact) for so long as Defendant perceived Mr. Odom to be an increased contagion hazard.  Mr. Odom was and is willing to personally shoulder the costs of any enhanced protocols.  Third, Defendant could have permitted any combination of the above options.  Defendant's refusal to contemplate any of these avenues, and the decision to impose the most punitive choice available, gives rise to an inference of discriminatory intent

80.     In fact, Defendant CSI made no effort to engage in the interactive process to find a reasonable accommodation; thus, it lacks the evidence needed to meet its burden of proof to establish that accommodating Mr. Odom would have posed an undue hardship. *See, e.g., Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 132 (1st Cir. 2004) (stating that in situations where no reasonable accommodations were offered, an employer "may only prevail [an undue burden defense] if it shows that no accommodation could have been made without undue hardship.); *EEOC v. Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991) ("After failing to pursue [a voluntary waiver of seniority rights] or any other reasonable accommodation, the company is in no position to argue that it was unable to accommodate reasonably [plaintiff's] religious needs without undue hardship on the conduct of its business."); and *EEOC v. Ithaca Indus., Inc.*, 849

F.2d 116, 118-19 (4th Cir. 1988) (finding that employer's failure to attempt to accommodate, absent any showing of undue hardship, violated Title VII).

81. Defendant's refusal to work in good faith with Mr. Odom to find a reasonable accommodation that would have allowed him to continue working alone in a crane disregards scientific evidence available to Defendants during the relevant times, confirming that a combination of mask-wearing and periodic testing is equivalent to (or better than) vaccination at preventing the spread of COVID-19. For example, a study published in November 2021 conducted by researchers at the University of Antwerp, Belgium, investigated the impact of different testing strategies on the SARS-CoV-2 infection dynamics in a primary school environment where vaccination is not available found that repetitive testing policies can significantly reduce the attack rate in schools. *See* Torneri, Andrea, *et al., Controlling SARS-CoV-2 in schools using repetitive testing strategies,* MedRxiv (November 15, 2021), *available at* https://www.medrxiv.org/content/10.1101/2021.11.15.21266187v1.full.pdf.

82. Defendants never asked Mr. Odom if he was willing to pay for his COVID-19 testing, which would have alleviated any financial hardship to CSI.

83. On information and belief, Defendants refused to consider that Mr. Odom had laboratory proof of natural immunity to the SARS-CoV-2 virus. Natural immunity is more robust and durable than immunity from vaccination. *See, e.g.,* Turner, Jackson S., *et al., SARS-CoV-2 infection induces long-lived bone marrow plasma cells in humans,* Nature (MedRxiv) (May 24, 2021), *available at* https://pubmed.ncbi.nlm.nih.gov/34030176/. Yet, Defendants refused to consider Mr. Odom' natural immunity at all relevant times.

84. Defendants' refusal to work in good faith with Mr. Odom to find a reasonable accommodation that would have allowed him to continue working alone in a crane disregards the

14

EEOC guidance that periodic testing and masking is a reasonable accommodation for those holding sincere religious beliefs that make it impossible for them to receive the COVID-19 vaccine. *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws,* U.S. Equal Employment Opportunity Commission (May 28, 2021), *available at* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (stating that, "as a reasonable accommodation, an unvaccinated employee entering the workplace might wear a face mask, work at a social distance from coworkers or non-employees, work a modified shift, get periodic tests for COVID-19, be given the opportunity to telework, or finally, accept a reassignment.")

85.     Mr. Odom was willing to regularly test at his own expense, wear a mask at all times when around others, undergo daily symptom screening, and social distance. However, the Defendant determined no accommodations were available that did not constitute an undue hardship, despite the fact that Mr. Odom worked alone in a crane and the data available in December 2021 that concluded that the vaccines were largely ineffective in neutralizing the Omicron variant. *See* Wilhelm, Alexander *et al., Reduced Neutralization of SARS-CoV-2 Omicron Variant by Vaccine Sera and monoclonal antibodies,* medRxiv (December 7, 2021), *available at* https://www.medrxiv.org/content/10.1101/2021.12.07.21267432v1.

86.     Defendants only offered Mr. Odom an illusory "accommodation," which amounted to an arbitrary unpaid and indefinite leave of absence, with no defined metrics as to when Mr. Odom could resume his work and with no Title VII protection regarding the reasonableness of the "accommodation."

87.     According to data from the U.S. Centers for Disease Control and Prevention ("CDC") website, during the prominence of the Omicron variant in the United States, the week of

January 13, 2022 saw the highest number of cases in Norfolk City, Virginia, with a 7-day moving average of 3,881 cases. From mid-January 2021 to mid-March 2021, the cases steadily declined. The week Mr. Odom was terminated, the 7-day moving average for Norfolk City, Virginia fell 22% to 72 and the total deaths fell to less than 10:



*See COVID Data Tracker,* Centers for Disease Control and Prevention, *available at* https://covid.cdc.gov/covid-data-tracker/#datatracker-home.

88.     By refusing to consider Mr. Odom's religious exemption request, Defendant CSI subjected Mr. Odom to disparate treatment and disparate impact discrimination based on his religious beliefs and practices.

89.     On information and belief, by automatically granting medical exemptions to pregnant individuals while refusing to consider Mr. Odom's religious exemption request, CSI's policy was facially discriminatory.

90.     Further, by replacing Mr. Odom with his protégé that was in his mid-thirties, CSI engaged in age discrimination.

16

**Defendants' Discriminatory and Retaliatory Actions
Have Significantly Damaged Mr. Odom**

91.     Defendant's failure to consider Mr. Odom's accommodation request significantly damaged Mr. Odom's career and future earning potential in his twilight years. Because Mr. Odom was at the height of his career regarding experience and compensation, and considering his age, Mr. Odom faces grim employment prospects.

92.     Thus, Defendant's actions have irreversibly damaged his career, future earning potential and have significantly damaged the value of his retirement savings.

93.     As a result of Defendant's unlawful conduct, Mr. Odom has been forced to live off of savings from March 2021 to the present, during a time when he should be making significant gains in his retirement accounts.

94.     As a direct and proximate cause of Defendant's wrongful conduct alleged above, which was a substantial factor in the interference of Mr. Odom' ability to enjoy the benefits of his 21 years of employment with Defendant CSI, Mr. Odom has suffered financial damages in the amount subject to proof, but in any case, exceeding $250,000, the exact damage amount to be determined according to proof at the time of trial.

95.     As a direct and proximate result of Defendants' wrongful conduct alleged above, Mr. Odom has suffered and continues to suffer emotional distress, humiliation, mental anguish, and embarrassment, as well as the manifestation of physical symptoms as a result of the stress. Mr. Odom is informed and believes and thereupon alleges that he will continue to experience said physical and emotional suffering for a period in the future not presently ascertainable, all in an amount subject to proof at the time of trial.

**Exhaustion of Administrative Remedies**

17

96.     On March 8, 2022, Mr. Odom filed a Charge of Discrimination with the U.S. Equal

Employment Opportunity Commission, Norfolk area office, against CSI.

97.     Following numerous efforts to resolve this matter, Mr. Odom requested a Notice of

Right to Sue letter on September 15, 2022.

98.     The Norfolk area office issued Mr. Odom a Notice of Right to Sue on September

19, 2022, in Charge No. 437-2022-00640.

**FIRST CAUSE OF ACTION**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C § 2000e, *et seq.***
**Failure to Accommodate**

99.     Mr. Odom hereby realleges and adopts each and every allegation in the preceding

paragraphs above as if fully set forth herein.

100.    Title VII defines the protected category of religion to include "all aspects of

religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

101.    Liability for a failure-to-accommodate claim is based upon an employer's making

an employee's "religious practice, confirmed or otherwise, a factor in [an] employment

decision[]." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015).

102.    Mr. Odom is, and at all relevant times herein was, a practicing Christian. Pursuant

to his sincerely-held Christian religious beliefs, Plaintiff is compelled to decline any of the

available COVID-19 vaccines.

103.    Mr. Odom formally notified Defendant of his religious beliefs by requesting a

religious accommodation.

104.    The EEOC's "Employer's Best Practices" requires that an employer "individually

assess each request and avoid assumptions or stereotypes about what constitutes a religious belief

18

or practice or what type of accommodation is appropriate." *See* EEOC Compliance Manual (January 15, 2021) https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination.

105. The EEOC recommends that employers engage in an interactive process regarding requests for religious accommodation. *See* EEOC Compliance Manual § 12-IV(A)(2) (January 15, 2021) https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftnref221.

106. Defendant CSI took tangible employment action against Mr. Odom by denying him the interactive process, denying him a reasonable accommodation to the COVID-19 vaccine mandate, placing him on leave without pay and discharging him for exercising his religious beliefs.

107. Defendant CSI never responded to Mr. Odom's request for a religious accommodation to the COVID-19 vaccine mandate.

108. Defendant CSI never sought clarifying or additional information regarding Mr. Odom's sincerely held religious beliefs.

109. Defendant CSI never engaged Mr. Odom regarding methods of risk mitigation or alternatives to the COVID-19 vaccination.

110. On information and belief, Defendant has not accommodated any requests by employees for a religious exemption to the COVID-19 vaccine mandate. "In a religious accommodation case, an employee can establish a claim even though she cannot show that other (unprotected) employees were treated more favorably . . . ." *Reed v. Fairfax Cty.*, No. 1:18-cv-1454, 2020 U.S. Dist. LEXIS 8866, at *13 (E.D. Va. Jan. 15, 2020) (citing *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1018 (4th Cir. 1996)).

111. Defendant's termination, denial of benefits, and other adverse employment actions against Mr. Odom was motivated by, and are the result of, the exercise of his sincerely held

19

religious beliefs. Defendant used the vaccination mandate as a convenient tool to purge employees who, like Mr. Odom, possessed disfavored religious beliefs.

112.     Defendant CSI improperly refused Mr. Odom a reasonable accommodation that would allow him to remain employed and cannot show that there is no reasonable accommodation that would not pose an undue burden, including testing, masking, and social distancing. Moreover, Mr. Odom provided laboratory proof of natural immunity to the SARS-CoV-2 virus which was disregarded by CSI.

113.     In denying Mr. Odom a reasonable accommodation, CSI failed to conduct an individualized assessment and failed to consider that Mr. Odom worked in a single occupancy crane compartment for the vast majority of his day.

114.     Reasonable alternatives to vaccination were available in Mr. Odom's circumstance, in light of his unique position as a crane operator and his documented natural immunity, that would not have posed an undue hardship on Defendant CSI.

115.     Any justification offered by Defendant for its failure to accommodate Mr. Odom is either false or insufficient to support the nature of the adverse employment actions taken.

116.     Defendants' refusal to consider or grant Mr. Odom' request for accommodation and exemption from the COVID-19 vaccine mandate has caused, is causing, and will continue to cause irreparable harm to Mr. Odom.

117.     Defendant violated Title VII, and Mr. Odom is entitled to the relief set out more fully below, including compensatory damages, back pay, front pay, compensation for benefits, past and future medical and counseling expenses to the extent any exist, interest, and reasonable attorneys' fees and costs of the action pursuant to 42 U.S.C. § 2000e-5(k).

118.    As a result of Defendant's intentional and/or reckless violation of the Title VII rights of Mr. Odom, he suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life, thereby entitling him to compensatory damages.

119.    The events described here justify an award of punitive damages under Title VII.

120.    Mr. Odom is entitled to other such relief as this Court deems appropriate.

WHEREFORE, Mr. Odom respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

**SECOND CAUSE OF ACTION**
**Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C § 2000e,** *et seq.*
**Disparate Treatment on the Basis of Religion**

121.    Mr. Odom hereby realleges and adopts each and every allegation in paragraphs 1-98 above as if fully set forth herein.

122.    Title VII prohibits discrimination against employees on the basis of their religion. 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . .")

123.    Title VII defines the protected category of religion to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

124.    "[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State Univ.*, 570 U.S. 421, 450 (2013).

125.    Employers should assume that an employee's belief is sincere. *See* EEOC Compliance Manual § 12-IV(A)(3) (January 15, 2021) https://www.eeoc.gov/laws/guidance

21

/section-12-religious-discrimination ("Because the definition of religion is broad and protects beliefs, observances, and practices with which the employer may be unfamiliar, the employer should ordinarily assume that an employee's request for religious accommodation is based on a sincerely held religious belief."). The Fourth Circuit determined that it is not the employer's place to question the correctness or even the plausibility of an employee's religious understandings. *United States EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 142 (4th Cir. 2017) (Affirming the District Court's order denying the employer's request for a new trial and judgement as a matter of law following a jury verdict for EEOC that the employer's failure to provide a religious accommodation to its employee amounted to religious discrimination under Title VII).

126. Defendant CSI discriminated against Mr. Odom based on his sincerely held religious beliefs concerning the terms, conditions, and privileges of employment.

127. Defendant CSI took tangible employment action against Mr. Odom by denying him the interactive process and denying him a reasonable accommodation to the COVID-19 vaccine mandate, unlawfully discriminated against Mr. Odom by discharging him for exercising his religious beliefs.

128. Defendant CSI's actions show a systemic and concerted pattern or practice of discrimination. On information and belief, Defendant has not accommodated any requests by employees for a religious exemption.

129. On information and belief, CSI automatically granted medical accommodations to the COVID-19 vaccine mandate for pregnancy but denied **all or virtually all** religious accommodation requests.

130. On information and belief, another former CSI employee inquired with a CSI supervisor regarding accommodations to the COVID-19 vaccination, to which the supervisor

replied, "don't bother, it won't be approved," or words to that effect. On information and belief, said employee heard that the only accommodation CSI would give to the COVID-19 vaccination was for the temporary medical condition of pregnancy.

131.    On or about November 12, 2021, Mr. Odom was verbally told by Ms. Stowers that **"Colonna is not accepting any exemptions other than for pregnancy**," or words to that effect.

132.    Defendant's termination, denial of benefits, and other adverse employment actions against Mr. Odom was because of his sincerely held religious beliefs.

133.    Defendant CSI's failure to respond to Mr. Odom's request for a religious accommodation to the COVID-19 vaccine mandate and his repeated requests for status updates reveals CSI's disdain and disregard for the religious beliefs of its employees and that the religious exemption process is a sham.

134.    Defendant CSI's conduct constituted reckless indifference by its repeated refusal to make any reasonable efforts to accommodate Mr. Odom despite the Task Force guidance that permitted accommodations for medical and religious beliefs.

135.    Any justification offered by Defendant for the adverse employment actions is either false or insufficient, and is therefore pretextual, and therefore cannot support the nature of the adverse employment actions taken.

136.    Denying all or substantially all accommodations on the basis of religion was not required by CSI's business necessity and was not required by EO 14042.

137.    Defendant's discrimination against Mr. Odom was intentional and performed with malice, willfulness, and reckless indifference to Mr. Odom' protected civil rights.

138.    Defendant, therefore, violated Title VII, and Mr. Odom is entitled to the relief set out more fully below, including compensatory damages, back pay, front pay, compensation for

benefits, past and future medical and counseling expenses to the extent any exist, interest, and reasonable attorneys' fees and costs of the action pursuant to 42 U.S.C. § 2000e-5(k).

139.    As a result of Defendant's intentional violation of the Title VII rights of Mr. Odom, he suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life, thereby entitling him to compensatory damages.

140.    The events described here justify an award of punitive damages under Title VII.

141.    Defendants' refusal to consider or grant Mr. Odom' request for accommodation and exemption from the COVID-19 vaccine mandate has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Mr. Odom' sincerely held religious beliefs.

142.    Mr. Odom has no adequate remedy at law for the continuing deprivation of his most cherished constitutional liberties and sincerely held religious beliefs.

143.    Mr. Odom is entitled to other such relief as this Court deems appropriate.

WHEREFORE, Mr. Odom respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

### THIRD CAUSE OF ACTION
### Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C § 2000e, *et seq.*
### Disparate Impact on the Basis of Religion

144.    Mr. Odom hereby realleges and adopts each and every allegation in paragraphs 1-98 above as if fully set forth herein.

145.    Title VII provides that an unlawful employment practice based on disparate impact is established when either an employee shows that an employment policy causes such a disparate impact and the employer fails to show "that the challenged practice is job related . . . and consistent with business necessity," or the employee shows there is an alternative way to serve the stated needs, but the employer refuses it. 42 U.S.C. § 2000e-2(k)(1)(A).

146. Even if facially neutral, Defendant's vaccination policy was enforced in a way that had a disparate impact on Mr. Odom, and other employees who hold sincere religious beliefs that conflict with the COVID-19 vaccination requirement by forcing employees to abandon their religious obligation or forgo employment with Defendant CSI. Mr. Odom is a member of a protected class (employees who hold sincere religious beliefs that conflict with the COVID-19 vaccine) that was subjected to disparate impact as a result of the Defendant CSI's implementation of the COVID-19 vaccine mandate in a way that disproportionately impacted individuals on the basis of religion.

147. On information and belief, CSI granted accommodations to the COVID-19 vaccine mandate for non-religious reasons while denying accommodations based on religion.

148. Mr. Odom and at least one other CSI employee were forced to choose between their employment and religious beliefs.

149. On information and belief, alternate employment practices were available that would have resulted in less discrimination on the basis of religion.

150. Denying all or substantially all accommodations on the basis of religion was not required by CSI's business necessity and was not required by EO 14042.

151. As a direct and proximate result of this additional unlawful action by Defendant, Mr. Odom suffered lost income and other economic and non-economic damages.

WHEREFORE, Mr. Odom respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

25

### FOURTH CAUSE OF ACTION
### Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C § 2000e, *et seq.*
### Retaliation

152.    Mr. Odom hereby realleges and adopts each and every allegation in paragraphs 1-98 above as if fully set forth herein.

153.    42 U.S.C. 2000e-3(a) makes it unlawful for "an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

154.    The "EEOC has taken the position that requesting a religious accommodation is a protected activity under this provision of Title VII." EEOC Compliance Manual § 12-IV(B) https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftnref221.

155.    Mr. Odom requested a religious accommodation to the COVID-19 vaccine mandate in early November 2021.

156.    In close temporal proximity to seeking religious accommodation, Mr. Odom was placed on leave without pay on November 15, 2021. Because multiple no-cost accommodation options were available, the leave without pay option constituted adverse employment action and retaliation for engaging in protected activity (seeking a religious exemption).

157.    Mr. Odom's 60-day period of leave without pay was extended to 90-days without any communication or explanation from CSI and constituted an additional act of retaliation.

158.    From in or about November 2021 through in or about March 2022, Mr. Odom repeatedly inquired with the CSI Human Resources department regarding the status of his request for a religious accommodation.

159.    At all relevant times, CSI refused to respond to any of Mr. Odom's inquiries regarding the status of his accommodation request or the status of his employment. In the repeated follow-up attempts, Mr. Odom was attempting to assert his rights protected under Title VII.

160.    Defendant CSI's failure to respond to Mr. Odom's request for a religious accommodation to the COVID-19 vaccine mandate reveals CSI's disdain and disregard for the religious beliefs of its employees, including Mr. Odom, and that the religious exemption process is a sham.

161.    The termination letter from CSI failed to provide any justification or reason for Mr. Odom's termination.

162.    Mr. Odom was discharged from employment with Defendant CSI in retaliation for engaging in protected activity, requesting a religious exemption accommodation and challenging the Defendant's refusal to respond to his numerous inquiries with Human Resources.

163.    Defendants' retaliation against Mr. Odom was intentional and performed with malice, willfulness, and reckless indifference to Mr. Odom' protected civil rights.

164.    Defendants' actions constitute unlawful retaliation in violation of Title VII.

165.    By the aforesaid acts and conduct of Defendant, Mr. Odom has been directly and legally caused to suffer actual damages, as set out more fully below, including compensatory damages, back pay, front pay, compensation for benefits, past and future medical and counseling expenses to the extent any exist, interest, and reasonable attorneys' fees and costs of the action pursuant to 42 U.S.C. § 2000e-5(k).

166.    As a result of Defendants' intentional violation of the Title VII rights of Mr. Odom, he suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life, thereby entitling him to compensatory damages.

167.    The events described here justify an award of punitive damages under Title VII.

168.    Mr. Odom is entitled to other such relief as this Court deems appropriate.

WHEREFORE, Mr. Odom respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

**FIFTH CAUSE OF ACTION**
**Violation of the Virginia Human Rights Act, as Amended by the Virginia Values Act**
**Virginia Code § 2.2-3900, *et seq.***
**Religious Discrimination in Employment**

169.    Mr. Odom hereby realleges and adopts each and every allegation in paragraphs 1-98 above as if fully set forth herein.

170.    The Virginia Human Rights Act, Va. Code § 2.2-3900(B), provides, "[i]t shall be the policy of the Commonwealth" to "[s]afeguard all individuals within the Commonwealth from unlawful discrimination in employment because of . . . religion . . . ."

171.    Mr. Odom is, and at all relevant times herein was, a practicing Christian.  Pursuant to his sincerely-held Christian religious beliefs, Plaintiff is compelled to decline the COVID-19 vaccination.

172.    Mr. Odom formally notified Defendant of his religious beliefs by requesting a religious accommodation.

173.    Defendant CSI took tangible employment action against Mr. Odom by denying him the interactive process, denying him a reasonable accommodation to the COVID-19 vaccine mandate, and discharging him for exercising his religious beliefs.

174.    Defendant CSI never responded to Mr. Odom's request for a religious accommodation to the COVID-19 vaccine mandate.

175.    Defendant CSI never sought clarifying or additional information regarding Mr. Odom's sincerely held religious beliefs.

28

176.    Defendant CSI never engaged Mr. Odom regarding methods of risk mitigation or alternatives to the COVID-19 vaccination.

177.    On information and belief, Defendant has not accommodated any requests by employees for a religious exemption to the COVID-19 vaccine mandate.

178.    On information and belief, CSI automatically granted medical accommodations to the COVID-19 vaccine mandate for pregnancy but denied **all or virtually all** religious accommodation requests.

179.    On information and belief, another former CSI employee inquired with a CSI supervisor regarding accommodations to the COVID-19 vaccination, to which the supervisor replied, "don't bother, it won't be approved," or words to that effect. On information and belief, said employee heard that the only accommodation CSI would give to the COVID-19 vaccination was for the temporary medical condition of pregnancy.

180.    On or about November 12, 2021, Mr. Odom was verbally told by Ms. Stowers that "**Colonna is not accepting any exemptions other than for pregnancy**," or words to that effect.

181.    Defendant's termination, denial of benefits, and other adverse employment actions against Mr. Odom was motivated by, and are the result of, the exercise of his sincerely held religious beliefs.

182.    Defendant CSI improperly refused Mr. Odom a reasonable accommodation that would allow him to remain employed and is not able to show that there is no reasonable accommodation that would not pose an undue burden, including testing, masking, and social distancing. Moreover, Mr. Odom provided laboratory proof of natural immunity to the SARS-CoV-2 virus which was disregarded by CSI.

183. In denying Mr. Odom a reasonable accommodation, CSI failed to conduct an individualized assessment and failed to consider that Mr. Odom worked in a single occupancy crane compartment for the vast majority of his day.

184. Reasonable alternatives to vaccination were available in Mr. Odom's circumstance, in light of his unique position as a crane operator and his documented natural immunity, that would not have posed an undue hardship on Defendant CSI.

185. Any justification offered by Defendant for its failure to accommodate Mr. Odom is either false or insufficient to support the nature of the adverse employment actions taken.

186. Defendant CSI's failure to respond to Mr. Odom's request for a religious accommodation to the COVID-19 vaccine mandate reveals CSI's disdain and disregard for the religious beliefs of its employees, and that the religious exemption process is a sham.

187. Denying all or substantially all accommodations on the basis of religion was not required by EO 14042. In fact, EO 14042 required that reasonable accommodations be made where, as here, such an accommodation would not pose an undue hardship on the employer.

188. Defendant's refusal to recognize and accommodate Mr. Odom's sincere religious belief was neither required for Mr. Odom' job duties nor consistent with business necessity.

189. Defendants' refusal to consider or grant Mr. Odom' request for accommodation and exemption from the COVID-19 vaccine mandate has caused, is causing, and will continue to cause irreparable harm to Mr. Odom.

190. Defendant violated the VHRA, and Mr. Odom is entitled to the relief set out more fully below, including compensatory damages, back pay, front pay, compensation for benefits, past and future medical and counseling expenses to the extent any exist, interest, reasonable attorneys' fees and costs of the action, and punitive damages pursuant to Va. Code § 2.2-3908.

30

191.   As a result of Defendant's intentional violation of the civil rights of Mr. Odom, he suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life, thereby entitling him to compensatory damages.

192.   Mr. Odom is entitled to other such relief as this Court deems appropriate.

WHEREFORE, Mr. Odom respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

**SIXTH CAUSE OF ACTION**
**Violation of the Virginia Human Rights Act, as Amended by the Virginia Values Act**
**Virginia Code § 2.2-3905(B)(7)**
**Retaliation**

193.   Mr. Odom hereby realleges and adopts each and every allegation in paragraphs 1-98 above as if fully set forth herein.

194.   The Virginia Human Rights Act, Va. Code § 2.2-3905(B)(7) prohibits retaliation against any individual "because such individual has opposed any practice made an unlawful discriminatory practice by this chapter . . . ."

195.   Mr. Odom requested a religious accommodation to the COVID-19 vaccine mandate in early November 2021.

196.   Mr. Odom was placed on leave without pay on November 15, 2021.

197.   Mr. Odom's 60-day period of leave without pay was extended to 90-days without any communication or explanation from CSI.

198.   From in or about November 2021 through in or about March 2022, Mr. Odom repeatedly inquired with the CSI Human Resources department regarding the status of his request for a religious accommodation.

199.   At all relevant times, CSI refused to respond to any of Mr. Odom's inquiries regarding the status of his accommodation request or the status of his employment.

200. Defendant CSI's failure to respond to Mr. Odom's request for a religious accommodation to the COVID-19 vaccine mandate reveals CSI's disdain and disregard for the religious beliefs of its employees, including Mr. Odom, and that the religious exemption process is a sham.

201. The termination letter from CSI failed to provide any justification or reason for Mr. Odom's termination.

202. Mr. Odom was discharged from employment with Defendant CSI in retaliation for his protected activity, requesting a religious exemption accommodation and challenging the Defendant's refusal to respond to his numerous inquiries with Human Resources.

203. Defendants' retaliation against Mr. Odom was intentional and performed with malice, willfulness, and reckless indifference to Mr. Odom' protected civil rights.

204. Defendants' actions constitute unlawful retaliation in violation of the VHRA.

205. Defendant violated the VHRA, and Mr. Odom is entitled to the relief set out more fully below, including compensatory damages, back pay, front pay, compensation for benefits, past and future medical and counseling expenses to the extent any exist, interest, reasonable attorneys' fees and costs of the action, and punitive damages pursuant to Va. Code § 2.2-3908.

206. As a result of Defendant's intentional violation of the civil rights of Mr. Odom, he suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life, thereby entitling him to compensatory damages.

207. Mr. Odom is entitled to other such relief as this Court deems appropriate.

WHEREFORE, Mr. Odom respectfully prays for relief against Defendants as hereinafter set forth in his prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Odom respectfully requests that this Court enter judgment in favor of Mr. Odom and against Defendants and:

    a. Order Defendants to make Mr. Odom whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and front pay, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendants' unlawful employment practices.

    b. Order Defendants to make Mr. Odom whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in an amount to be determined at trial.

    c. Order Defendants to make Mr. Odom whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and loss of civil rights, in an amount to be determined at trial.

    d. Order Defendants to pay Mr. Odom punitive damages for the intentional, reckless and/or egregious conduct described above, in an amount to be determined at trial.

    e. Order Defendants to reinstate Mr. Odom to the position held at the time he was placed on leave without pay with reasonable accommodation to the COVID-19 vaccine mandate.

f.  Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, successors, and assigns, and all persons in active concert or participation with them, from discriminating against applicants and current or future employees based on their religious beliefs and/or their refusal to violate their religious beliefs, including but not limited to, in their current and future employee vaccination policies.

g.  Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, successors and assigns and all persons in active concert or participation with them from retaliating against applicants and current or future employees based on their opposition to any conduct made unlawful by Title VII and/or VHRA, including but not limited to, from terminating current or future employees based on their religious beliefs and/or their refusal to violate their religious beliefs, and as part of their current and future employee vaccination policies.

h.  Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees, including but not limited to effective policies prohibiting religious discrimination and allowing for appropriate religious accommodation as part of their current and future employee vaccination policies, all of which eradicate the effects of Defendants' past and present unlawful employment practices.

i.  Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees, including effective policies prohibiting retaliation, including but not limited to as part of their current

34

and future employee vaccination policies, all of which eradicate the effects of Defendants' past and present unlawful practices.

j.  Grant such further relief as the Court deems necessary and proper in the public interest.

k.  Award attorneys' fees and costs of this action.

l.  Any such other relief as the Court may deem appropriate.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury as to all issues so triable.


Dated: December 19, 2022             Respectfully submitted,


By: /s/_____

Mark K. Odom
1745 Volvo Parkway
Chesapeake, Virginia 23320
Itsmarko62@yahoo.com
(757) 409-5583

*Pro Se*